is 161487 in Re Chudik. Good morning, Your Honor. Good morning. Let's make sure everybody has a chance to say their name. Okay, why don't you proceed, Mr. McFerrin. May I please, Your Honor? This case is about a scalpel. The picture of the Chudik scalpel is on page 6 of the opening brief, and the picture of the alleged anticipation is on page 8. I'd like to talk about just a couple of things. One of them is the evidence in the case, or lacking thereof. And then I would like to turn to the In Re Schreiber case, which seems to me to be the case that the solicitor relies on most heavily. Just a very brief review. The claim involved has a phrase right at the beginning describing the blade of the Chudik scalpel, configured for creating a passageway through skin and soft tissue to a target site on a bone. In the opening brief, I asserted that there is no evidence to support the examiner's conclusions that the blade in the anticipation in the Samuels pattern is capable of doing what this claim calls for. And I'm going to repeat that now so that my colleague can mention any evidence that they've found since the briefing schedule. Let me ask you a question that I didn't find an answer to, and maybe I can be helped by counsel from both parties. And is there a situation in the human body where you have skin and then bone? Or is it the case that there's always at least some amount of soft tissue or some sort of layer other than skin that's always found between a bone and? Your Honor, I'm a lawyer, so I'm going to repeat hearsay. My client is an orthopedic surgeon, and I asked him that very question. He says there is always soft tissue beneath the skin before you get down to the bone. That's the best I can answer you, and that's my understanding. Did you have an opportunity to amend your claim? I mean, some question arises here why, if you think the board came up with this construction, even if you disagree with it, why you just didn't narrow the claim language to account for it. Yes, Your Honor, I did have an opportunity to amend the claim, and we elected not to. We don't need to. The anticipation that there is no evidence anywhere that we can find that the Samuels patent is capable of doing what the claim calls for already. So that's why we didn't have to amend it. And that's because the Samuels patent is designed to only pierce skin. It's not only designed that way, Your Honor, it's limited to that. And excuse me, it doesn't pierce the skin, it makes a nick in the skin. And they repeat that word, nick, several times. And actually, the Samuels patent has a blocker and has a blade down below the blocker. And that distance from the base of the blocker to the point of the blade down here is always the same. It doesn't change. Are you saying that anticipatory reference is non-analogous art? No, Your Honor, I'm saying it is incapable of being an anticipation. It's not a matter of non-analogous art. The examiner said there are certain bones in your body that lie very, very close to your skin. Where although there's going to be some soft tissue under the surface layer of the skin and the bone, the bone is very, very close. I broke my wrist two weeks ago today, and the bones, you know, are very close to the skin. I understand that. Exactly. And I thought that the rationale of the board as well as the examiner was that the anticipatory reference was capable of puncturing the skin and to a target site on a bone, the bone lying very, very close to the skin. The answer to your question, first of all, is it's not capable of doing that. And as I was just explaining, is if that blocker rides on the surface of the skin and the tip of the blade makes a nick in the skin, that's all it's ever going to make. It doesn't go through to the soft tissue, and it never gets down to the bone. Right, but if you look at the drawing of the anticipatory reference, right, it shows a blade like a triangle, and it shows a considerable distance between the apex of the triangle, which is where the annulated hole is. And you see quite a little distance down to where the blocking device is. So it certainly looked to me that the Samuels teaches a device that might have been designed simply to barely touch the skin, right, to make a little prick, to make a little bigger hole so something else could go in. But if you simply look at the structure, right, if you pushed the Samuels device against my leg up to where it would stop as a result of the blocking device, you would be well under the skin. No, Your Honor, you don't. Why not? First of all, first of all, if you look at column four, that's appendix page 418. Look at the top of column four. Position between blade 10 and handle 20 is blocker 22. As may be seen in Fig. 1, blocker 22 has a width greater than that of the blade 10. As will be discussed below, this is necessary so that the depth of the blade travel into the patient's skin is limited. Well, of course it's limited. Well, that says it doesn't go through to the bone. Well, it's not asking whether it goes through the bone. I thought that was your question. It's not asking where the bone lies, sir, but it's admitting right there that the depth to which 32, i.e., the apex, the depth to which it can fall is as great as the distance between 32 and the level of 22. Correct? No, not correct. It's not greater than that. It's limited to the depth that the point of the blade can penetrate. Yes, the point of the blade. And it can't go any further than that. No, Samuel's blade can't go any deeper than where 22 touches the skin. That's all the Samuel's thing can do is get down to the skin and nick it. Is that what you're asking? No, no, no. I'm looking at the drawing. That's on page 414, I think, of Figure 1. And Figure 1 is showing a triangular blade that has a, what do you call it? Let's call it a blocker. A blocker, okay. And the blocker is some considerable distance below the point of the sticking where you nick. But that distance is defined, Your Honor. Where? What in the passage I just read. The distance is to say that it is, you will go no deeper than the blocker will allow you to go. That's correct. Right. And I'm saying all you have to do is look at the device to see that it's designed to go more than just a tiny little prick through the skin. But that passage also says so that the depth of the blade travel into the patient's skin is limited. Limited doesn't mean nonexistent. And you may or may not hit a bone. If you're going for my rear end bone coming through my cheek, you're never going to find it with Samuel's. But if you're looking for a bone in the back of my wrist, you're going to find it because it's wise with almost right at the skin. Let me say two things, Your Honor. Okay. First of all, I think the passage I just read is a controlling passage. There's another one close to the bottom of the page I could also read. But secondly, there is no evidence in the case anywhere that the board never conducted any tests, never tried anything. The examiner never tried anything. There is no evidence to support the argument that the point of the Samuel's blade goes on down to the bone. There's no evidence to prove that at all. You can make your supposition, Your Honor, and look at the drawing, but there's no evidence to support that. And you know we can't do anything without evidence. But if you have a bone, isn't the device capable of reaching a shallow bone? No, Your Honor, it's not. Why not? Because the distance between the blocker and the point of the blade holds the point of the blade above the bone, above the soft tissue. It only nicks the skin, and that's what this patent says it does. And this patent is the only evidence to that subject in the case. Well, the reference you've been talking about on the same column four, it talks about you advance the blade into the patient's skin until blocker 22 impedes further travel. So doesn't that suggest what Judge Clevender has been describing? It's the blocker. This goes as far as the blocker will take it. Yes. And the blocker is always resting on the surface of the skin, and the blocker is there to only allow you to produce a nick. That's all the patent talks about, producing a nick. Assume that the examiner had gone to a medical record and put in evidence a bone in the body that is so close to the skin that there is virtually nothing between the skin and the body. You've just supplied evidence, Your Honor. So assume that evidence was in the record. Then you lose, right? If there was such evidence, I would have to rely on this patent. I don't think I'd lose, Your Honor. But that makes a closer case if there was such evidence. I'd have to somehow. Like the top of your head or the back of your hand or something like that? I would have had to somehow combat that. And at that point, the burden would have shifted to me to disprove it. There was no reason for any burden to be shifted to me. The board didn't have anything more than its agreement with the examiner's findings, which I say are unsupported. But if they had had reason to think that the point of the Samuel's blade went deeper, for some evidence in the record, I would have had to do something. But I didn't have to. The board can't take judicial notice of the existence of a bone in the body that lies so close to the skin as to having no real difference between the amount of soft tissue under the skin from a dermatology point of view as opposed to the top of your brain or back of your hand. It's not possible to take judicial notice of anatomy. You wouldn't permit judicial notice of what you've just hypothesized. You wouldn't permit that. There's no evidence to suggest that. In fact, it's contrary to the patent. What you're looking at, I believe, is the drawing of the scalpel, which is out in the open, the Samuel scalpel. And I'm saying that that's probably an accurate drawing if you blow up the size of the scalpel and look at it as a picture without anything else around. Counselor, there's also the drawings in the patent, like 3A and 3B, that show skin and the human hair, I think, are put into perspective a little bit more, perhaps the size of the blade. My understanding is that— Excuse me, Your Honor. I would have, but I was limited to the question. OK, yeah. I'm pointing out that there are other figures in the patent that also indicate—one could say indicate the size of the blade. But as far as I know, none of these figures provide the distance between the blocker and the tip of that blade. They only show you that the blade is going into the skin. They do not show you anything below the skin, either the soft tissue or the bone. Oh, my. I have five minutes, I believe. Well, actually, your time has expired, but we'll restore three minutes for rebuttal. Why don't we turn to the other side? Thank you. Thank you. Thank you. May it please the Court. Chodak spends a lot of time focusing on Samuels and the use of the term nick. But I want to explain, I guess, a little background of what Samuels teaches and why one understands that the blade would actually penetrate the skin and be capable of reaching bone. First off, at column one, a skin nick is defined as a skin incision, so it's not just simply sort of just touching the surface. And a dermatotomy, which is what's discussed in Samuels, is a skin incision of the skin. But more generally, if you look to column one and two, which explains the background of the invention and the purpose of the blocker, I think it becomes clear that the blades in Samuels would reach bones that are close to the skin surface. But it never says that. It never explicitly talks about anything than nicking the skin, right? Specifically in the background, you have a line reference, Ms. Nelson? At the beginning of column one, Samuels discusses the field of the invention, which is basically interventional radiology and surgical procedures that are performed percutaneously. Percutaneous means through the skin. And in particular, they're talking about being able to access particular tubular structures, like the drainage system of the kidneys, the bile ducts and vascular system, through the skin to allow entry of a catheter or some kind of other surgical instrument. And it explains in the next paragraph that the way it works is that a guide wire is first inserted, and then these surgical blades allow it to be enlarged, bigger than the guide wire, to allow passage of something like a catheter or other devices. And in column two, the corth patent, they describe passing or making a cut to allow, through a patient, through the skin and the subcutaneous tissue to allow passage of an endoscopic instrument. So those are the background. That's the background art. Then in column one, at line 55, it describes the purpose of the blocker. And that purpose is to basically prevent the problem where if the tubular structure is somewhere near... Are you on column one, Dr. Nelson? Yes, column one, line 55. Further disadvantage? Further disadvantage. It talks about the scalpels in the art. And it talks about the problem of the scalpels potentially damaging... If you're going too far, whatever canal they built in there that they ran the wire through, you can adversely affect that structure. Is that the idea? The idea is that the tubular structure that you're tending to access, if you go too far, you could actually damage it. So if you're trying to get to the... Somehow, in the beginning, they managed to make a hole in you, go down and drill some holes in your bones, right? And then put a canal through that the string is going to go through? They're describing catheters and endoscopes. But the idea is, yes, you make a big enough hole that you can get whatever it is in through the skin and to the tubular structure you're trying to access, whether it be the bile ducts or vascular, like the veins of the blood veins or blood arteries. But it talks about the problem that sometimes when these structures are closer to the skin surface, that inadvertently a surgeon could go too far and actually the blade would puncture the actual target tubular structure. Meaning that the blocker is designed to make sure you don't go in that deep. Right. So I suppose your adversary's argument would be, well, if you were worried about going in far enough that you might hit the tubular structure, so you want to make sure you don't do that, you're not going in very far. And so you're not likely to be going in far enough to hit a bone. And I think the answer... Because the tubular structure is going to be in the bone down there somewhere. The tubular structure could be, based on the description, would be things like blood vessels or blood arteries or some kind of vascular tissue or bile ducts or whatever. A fair reading by one of skill in the art of Samuels would mean that you could place the blocker as appropriate so that you could actually get the catheter... Where do you get that? Excuse me? Where do you get that fair reading? Because of the background and the fact that it describes in column one what the whole point of the blocker is. It describes the purpose of the blocker. In column one, I'm just looking at that, it's still referring to the limitation of a skinned neck. I don't see what you're... I don't see your argument. A skinned neck, which it defines as an incision. And the whole point of the invention is to allow passage of a catheter or other device. Are you talking about Samuels? Samuels, yes. And just that they're... It's to make a big enough hole in the skin to be able to stick into the thing that's going to go down there and do the work and the surgery. Right. But without going so far. So you need to get far enough to get it into where it needs to go, but you don't want the blade to go so far. Yeah, to make sure it doesn't go too far, meaning beneath the skin level. It's got a blocker that prevents the blade from going beyond the skin. But it's got to get through the skin to get to wherever the catheter needs to go or whatever instrument. Yeah, it nicks the skin. You have a blade. It nicks the skin, but only the skin. Because there's a blocker there that prevents it from going any further. Now, the examiner at one time said, well, what you can do is you can sit there and nick and nick and nick and nick until you get to bone. But the board rejected that interpretation, correct? The board focused. The examiner had made two different arguments. One was that, and the other was simply that there are plenty of... And then the board rejected the nick, nick, nick argument. It didn't reject it, but it focused on the other argument by the examiner, which was that there are plenty of bones that are close to the skin surface, just like tubular structures. Maybe the question is whether the board accepted it. The board said, we accept the examiner's findings, lock, stock, and rail. They did adopt the examiner's findings, correct. They adopted each and every, adopted the whole thing. Yes, I guess that's true. So in theory, you're adopting the nick, nick, nick rationale as well as the bone close to the skin rationale. Correct, but they focused largely... The only one they mentioned in support of their decision was the fact that there are bones in the body that lie close to the skin. Correct. And what do you do with your adversary's argument that that is evidence that's made up out of a whole cloth? Where in the record is there a document that describes a bone that lies in a body so close to the skin that there is virtually no difference between that situation and the situations described in the Penn System of Records? I think the evidence is Samuels itself and the knowledge of one of skill in the art. One of skill in the art would know about the bone in the body in this clause? I think even a layperson would know that there are bones that are very close to the skin surface, like your knuckles or your knees or your forehead. Let's say I'm a layperson, obviously. I'm a layperson on this. But if you penetrate the skin, there's always something, it seems to me, between the bone and the skin. I mean, I've seen some injuries even to my own hand. And where the board's decision talks about the temple, you know, there's a place here in the head, right around in here where the bone lies very close to the skin, places of the hand, maybe the knee. But is there a layer of tissue underneath the skin between bone and skin? You're saying there's no tissue? Well, first off, I think soft tissue is a broad term that's used medically to mean anything that's not hard tissue like bones. So soft tissue encompasses the skin. But that aside, yes, I think that in most circumstances there is probably something beneath the skin that's very minimal. Would you apply this if Samuels is designed to prevent you from getting to that? I don't think that there's anything in Samuels that indicates that. In fact, quite to the contrary, the purpose of Samuels is, again, to introduce a catheter or an endoscopic instrument. Well, that's different. What you do after you make the neck and the skin is separate from what the blade is designed to do. The blade is designed only to neck, and it seems to me that the pen is full of that reference. That reference is clear in the patent, that Samuels on the blade only penetrates the skin. I don't see anything else that says it's supposed to go to the bone. You can get the blocker and alter it, you know. So I'm having a hard time following your reasoning. The description here in Samuels, it's clear that the whole point is to get things in. The reason that you use the knife, as explained here and in the prior art, is to actually make a larger hole so that you can pass whatever through. The problem here isn't whether the catheter or maybe even the wire that you insert in the channel of the blade, that that goes beyond the skin. What we're looking at here is whether the blade does. Well, the blade has to make the cut in order for the catheter to go through. And the blade has a channel that the guiding wire and the catheter flow through. But we're looking only at the blade and the depth of the cut that the blade makes, not the wire. Correct. The wire goes through first, and then the blade cuts around it. So the wire makes a very narrow point to whatever it's trying to access. And did you say that Samuels cuts beyond the blade? Forget about the wire, that the blade cuts beyond the depth of the skin? Yes, it has to, because it has to get through the skin to allow the catheter to get through, as it describes at the bottom of four, it talks about. So you're saying in the process of penetrating the skin that any of the underlying tissue has to also somehow be touched or implicated? Because there's nothing here that says, that shows me that the blade also cuts beneath the skin. Well, the prior art, like Horth and so forth, talks specifically about, Horth talks about going through the skin and subcutaneous tissue to access the kidney to allow an endoscopic instrument to go through. And the blade has to go so far as to make the cut as far as it needs to go in order to allow the passage of the instrument. What happens if your tubular structure that you're worried about is an artery? It's on the back of my hand. So you got skin, right? And then there's the artery. Maybe there's something between the skin and the artery? Correct. But clearly, we don't want to go deep enough to hit the artery. Correct. Because the prior art teaches away from that. I mean, Patton teaches away from that. Patton wants to make sure we don't go deep enough to get to the artery. Right. So how do we know we're going to get to the bone in my hand? Because we know we don't want to go deep enough to get to the artery. Correct. But Samuels encompasses multiple blades, and one of skill in the art would know to place the blocker as appropriate, depending on the structure you're trying to reach. But to the same extent that one could, using Samuel's blade, reach an artery that is below the surface of the skin and subcutaneous tissue. Where do we teach the differing blades and all that stuff that you just mentioned? Well, there's no limitation on the length of the blade or on the position of the blocker. Well, the limitation is just cutting the skin. I mean, that's pretty clear. I disagree that it's clear that it is limited to just cutting, and certainly not just going partway, as my counsel on the other side would suggest, just going partially through the skin. I think it's quite clear that the only way you're going to get a catheter through, which is what it describes at the bottom of column 4, lines 58 to 60, is to get through whatever tissue you need to, skin, subcutaneous tissue, to get the catheter to where you need to go. Okay, that's – is that really Samuels' thing? That is Samuels', yes. Samuels' talks about a catheter at the bottom of column 4. No, we're talking about the blade. We're talking about the depth of the cut of the blade. Right, and the depth of the cut of the blade has to be deep enough to get through whatever tissue you need to to get to the tubular structure you're trying to access. If you don't – if the blade isn't long enough, you're not going to be able to make that hole that you need. So if I had to get to the bone on my thigh, are you saying that the Samuels' blade would help me do that? It depends on where exactly, which bone. I mean, I would – No, my thigh, my thigh bone. Anywhere on my thigh. I got a big thigh. Anywhere on my thigh. Well, it might not access that – I think that might not be a reasonable interpretation of Samuels' thing, but I think Samuels' fairly understood in the context of placing this blocker. It's simply to access things that are close to the skin, surface, below the skin, but I think any blade that one would construct in keeping with Samuels' thing, one would also be able to reach bone. And I also submit along the lines of what Judge Clevenger was saying – I'm sorry, I'm at the end of my time. No, please go ahead. I wanted to come back to my question to you about where's the evidence in the record that there's a bone in the body that's close enough to the surface that by nicking the skin, and Judge Brain is hypothetical, you'll actually get to the bone. And you said, well, a common sense, everybody knows, but that's not evidence. And your adversary, I thought, very candidly said, well, if there was evidence in the record that there's a bone in the body that can be reached by essentially a nick, he knew he'd have a much harder case. But there's no evidence like that in the record. Well, I disagree there's no evidence because, again, I think Samuelson fairly portrays that. We have to be able to get – this thing has to be capable of getting at a bone. That's the claim limitation, right? Correct. So the anticipatory reference has to show you're going to be able to get at a bone. Judge Brain has just pointed out that the anticipatory device isn't going to get to the bone in his thigh. The blocker is going to stop the sharp point from getting to that bone. Whereas it could probably get to the bone in the back of my thumb or in my head or wherever. So where's the evidence? In addition to what I've just laid out, I also would submit that at column three it describes that the handle is of a length that a physician – What line on column three? Lines two to three and then again at lines 58 to 60 it describes the handle as being something that is held between the fingers of the surgeon. And looking to column – at figure four, assuming that's drawn to scale, if your fingers are used to grasp the handle, the blade is about – It doesn't matter. I mean, you've got to hold the knife. If the surgeon doesn't hold it between his or her fingers, how's he going to hold the knife? That gives you an idea of the scale because on figure four – But you can have a long handle. The handle's not in dispute here. The length of the handle doesn't matter, even if he's got to hold it with two hands. The question is the blade. Right, but figure four describes – pictures the blade and the handle, and the blade is about half as long as the handle. And column three describes the handle as being something that they could easily hold between their fingers. And so if the fingers can hold that blade, even at the smallest estimate of how long that blade – Look at figure 3A and 3B. There you have human hairs, I guess, on skin, and the hairs are longer than the blade. And obviously the handle is way, way longer than both the blade and the human hairs. I think the blade is longer than the hairs, and hairs are quite long.  But I think there's certainly evidence in four that if it's something that's grasped between the fingers, fingers are perhaps at a minimum an inch. The handle could be longer. Then that blade is at least a half inch, and that is certainly enough. I mean, really, we're not saying that this is drawn to scale, right? One would expect that the blade and the handle would be drawn to scale. Where does it say that? You're saying that this is the size of the blade between the sandwiches? I mean, with respect to the blade – between the blade and the handle, that they're drawn proportionally, the blade size and the handle size. Where does it say that? One would just expect that they would draw them to size. And certainly the instrument that is – Is that really the view that we take in figures, in patents, that they're drawn to – that this is the life-size image of a device or that it's drawn to size? I mean, I see tractors drawn on here. Certainly, I wouldn't be able to argue that the wheel's got to be bigger than depicted on the tractor. No, I'm not saying that it's drawn to size, but it's drawn proportionally so that the size of the handle and the size of the blade are drawn so that one gets – It's all probably much smaller than that, and you still have a triangular shape. I gather it's a conical blade. I can't really tell. Can you tell from the – It's a little bit wider. The blade's a little wider in the middle if you look at figure two, and then it's narrower at the edges. Okay. Well, I still – I mean, I don't hear you – I haven't heard you point to any evidence in the record to prove that there is a bone in the body that is shallow enough that it could be reached by the anticipatory reference. I think the evidence is simply that one of skill in the art would appreciate from Sam Mills that the blocker could be placed at whatever distance would be appropriate to access whatever tubular structure you're trying to access below the skin. Show me where the patent says that, that the blocker is adjustable like that. Well, the whole – You're drawing an inference from what you quoted earlier in column one that lines 56, 7, 8, 9. Correct. You're saying that if the purpose of this particular invention is to make certain you never go deep enough to damage structure. Correct. And so the operating surgeon – and you claim that this device is capable of being adjusted in different depths and sizes. If a surgeon is operating in a particular area, he knows he doesn't want to go any deeper than X because it hits structure. Correct. But he knows he can go to whatever depth he needs to go to so long as he doesn't hit structure. And so if he's in a situation where there is a bone, if there is one in your body that's very close and he needs to nick the skin to get the catheter in, he can use this device because he can be assured that he isn't going to go deep enough to hit the structure. Correct. That's what you draw out of line. But still, it doesn't tell you anything about where the bone is. Well, Samuels doesn't, but I think the examiner's view is that that's something that one of skill in the art would appreciate and one layperson even that in certain places like here, they're very close. And to the extent you're – Is the examiner's credibility in any way impaired by the prick, prick, prick example that he used, which I think we all agree is wrong? Nick, nick, nick. Nick, nick, nick. That was – If you have an examiner who's wrong half the time, it means we should validate what the examiner says on the other half? I mean, I don't think the nick, nick, nick procedure is totally crazy because it's understood in the art that – and if you look to even Samuels, but that when you put – You have to go deeper. When you insert the blade, the skin falls apart. Why wouldn't a surgeon use a different scalpel? Instead of nick, nick, nick, it's sitting there, nicking away to get to the bone with a little bitty blade. I mean, even when I cut steaks, I know when to use a little blade and a big one. But this is to a – this is to a device, to a product, and the issue is, and as this court's case law has always held, that simply a new use for an old device does not make it compatible. We're going to do that later. Thank you. Thank you, Your Honor. I'll just make a couple of brief points here. I thought I heard counsel say something about using the device in Samuels to make a deep enough nick to install a catheter. That's not – that's not Samuels. The catheter – the handle in Samuels and the blade have a cannulation down the middle, and the tool follows the cannulation down to the skin. That's what's happening here. But the idea is to make a big enough hole in the skin to allow whatever it is you're passing through to get there. Whatever you use, Your Honor, it ain't Samuels to make that hole. That's what Samuels talks about concerning the catheter. But Samuels doesn't say he uses that device that he's using in order to make the hole to install the guide wire. That's what I'm saying. Well, the guide wire went in early. Exactly. Exactly. It has to – How do you do that? I mean, they show a picture here of a – like a knee. I know, Your Honor, I know. A knee, and the knee has a hole in both of the knee bones, pre-existing hole, and a wire is threaded through the bone, and the wire comes out through the skin, and then they use that guide wire to know where to make the crack. It seems to me like they got that cart in front of the horse. If I can borrow from other things I've done for this orthopedic surgeon, you usually have some kind of suture pin or guide wire leading pin, and you install it with a tool that sends the guide wire to the place you want it to be fastened or where. Even if you want to make it go through the skin. I'm trying to make a hole in the skin to get it there. But you have another tool to use. You're not using this dermatology instrument to install the guide wire. That's what I couldn't understand, because I figured you had to make a pretty big hole in the skin to go down there and drill holes in the bone to have the wire go through the holes. So why are you worrying about making a tiny little crack after you've opened the skin up big enough to do the drilling? I sure agree with you, Your Honor. You've got to use something big enough to get that guide wire fastened in place. The other thing I wanted to just quickly mention is in the Shriver case. The majority points out to the minority. I think Judge Newman was the one who wrote the dissent. I've forgotten who wrote the opinion of the court. In Shriver, the devices were a cone to shake popcorn out of a few kernels at a time. And in the HartzPak, which was the prior art alleged anticipation, it was a spout that went on an oil can. And they were the same size and same shape and same everything. And that's why Shriver says it's not patentable to try to cover a new use for an old structure. That's not this case. You've got to get rid of that blocker. You've got to make the blade longer. You've got to do all kinds of things with the tool. And so Shriver, well, the court has said many times that you can't base an anticipation on hypotheses or conjectures. And you don't. And so the Shriver case, I agree with the Shriver case. I rather like it. But in its context, it doesn't apply here. Thank you. We thank both sides and the case is submitted.